Filed 9/13/24; Modified and Certified for Partial Pub. 10/3/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| YOLO LAND AND WATER DEFENSE et al., | |
| Plaintiffs and Appellants, | C099086 |
| v. | (Super. Ct. No. CV2022-0277) |
| COUNTY OF YOLO et al., | |
| Defendants and Respondents; | |
| TEICHERT INC., | |
| Real Party in Interest and Respondent. | |

Teichert, Inc. (Teichert) sought permission from the County of Yolo (Yolo County) to mine sand and gravel on specified property and then to reclaim a portion of the mined area to farmland, a lake, grasslands, and riparian habitat. Yolo County

1

prepared a draft environmental impact report (EIR) for the project and later a final EIR. Concluding that the benefits of the project overrode the significant and unavoidable environmental impacts, the Yolo County Board of Supervisors (the Board) certified the final EIR and approved the mining permit.

The Sierra Club and Yolo Land and Water Defense (appellants) filed a petition for writ of mandate against Yolo County and the Board (collectively the County) challenging the certification of the EIR and approval of the project. The trial court denied the writ petition and also denied appellant's challenge to a portion of the memorandum of costs filed by the County.

Appellants now contend (1) the EIR improperly included pollutants and emissions from other Teichert operations in the baseline for the project, (2) the EIR did not adequately address the potentially significant impacts of an increase in methylmercury in the reclaimed lake, (3) substantial evidence does not support a mitigation measure conclusion that 113 acres of prime farmland, equivalent in quality and capacity to existing prime farmland, will be reclaimed, and (4) it was improper to award the County costs for preparation of the administrative record, and the amount of the award was excessive and not supported by documentation.

We conclude (1) it was proper for the EIR to use existing conditions as the baseline for environmental analysis, and substantial evidence supports Yolo County's determination of the existing conditions; (2) the EIR adequately addressed the potentially significant impacts of the potential for an increase in methylmercury in the reclaimed lake; (3) substantial evidence supports the goal in mitigation measure 4.2-1 to reclaim mined land to a state equivalent in quality and capacity to existing prime farmland; and (4) it was proper to award the County costs for preparation of the administrative record, and appellants have not shown that the awarded amount was unsupported or unreasonable.

We will affirm the judgment and the order denying appellants' motion to tax the County's record preparation costs.

BACKGROUND

Teichert sought permission to mine sand and gravel at a 319.3-acre site in Yolo County within the boundaries of the Cache Creek Area Plan. The proposed project is known as the Teichert Shifler Mining and Reclamation project (Teichert Shifler or the project). The Cache Creek Area Plan contains an aggregate resources management plan for a portion of Lower Cache Creek that establishes a regulatory framework for off-channel mining. The project must comply with the Cache Creek Area Plan requirements.

The project provides that following mining activities, approximately 113 acres of the mining area will be reclaimed to agricultural use. Another portion of the mining area will be reclaimed to a lake, grasslands, and riparian woodland. In addition, there will be a transfer of permitted production from a Teichert Esparto mining operation (Teichert Esparto) and a Teichert Schwarzgruber mining operation (Teichert Schwarzgruber) to the Teichert Shifler operation.

Yolo County is the lead agency responsible for preparing the EIR for the project. (Pub. Resources Code, § 21080.1, subd. (a).)[1] A notice of preparation was released on August 16, 2019. Yolo County then prepared a draft EIR. After a public meeting to discuss the project and receive oral comments on the draft EIR, Yolo County prepared a final EIR.

The Board issued findings of fact and a statement of overriding considerations, concluding that the benefits of the project overrode the significant and unavoidable environmental impacts. It certified the final EIR and approved a mining permit for Teichert Shifler for a maximum term of 30 years to extract a maximum of 35.4 million

---

[1] Undesignated statutory references are to the Public Resources Code.

3

tons of material. It also approved the transfer of specified mining tonnage allocations from Teichert Esparto and Teichert Schwarzgruber to Teichert Shifler upon completion of the Teichert Esparto and Teichert Schwarzgruber operations.

Appellants filed a petition for writ of mandate under the California Environmental Quality Act (CEQA) (§ 21000 et seq.) and Code of Civil Procedure section 1094.5 or 1085 against the County, challenging the certification of the EIR and approval of the project. Appellants also filed a notice of election to prepare the administrative record pursuant to section 21167.6, subdivision (b)(2). Following a hearing, the trial court issued an order denying appellants' writ petition and entered judgment in favor of the County.

The County filed a memorandum of costs seeking, among other things, $3,813.45 for the cost to prepare the administrative record. Appellants filed a motion challenging that cost but the trial court denied the motion.

STANDARD OF REVIEW

The standard of review in a CEQA case is abuse of discretion. (§ 21168.5; *Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 512.) But we determine de novo whether the EIR's discussion of environmental impacts, mitigation measures or other required information is adequate, that is, whether the discussion is " ' " 'sufficient to enable those who did not participate in its preparation to understand and to consider meaningfully the issues raised by the proposed project.' " ' " (*Id.* at p. 516; see *id.* at pp. 513-516.) In doing so, we keep in mind that our role is to determine whether the EIR is sufficient as an informational document, not whether the agency's conclusions are correct. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392 (*Laurel Heights Improvement Assn.*); see CEQA Guidelines,

4

§§ 15003, subd. (i), 15151 (Guidelines).)[2]  And we review the agency's factual

determinations for substantial evidence.  (*Sierra Club,* at p. 516; *Vineyard Area Citizens*

*for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 435;

*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277,

1296 (*Habitat & Watershed Caretakers*).)  Under that standard, we accord deference to

substantive factual conclusions, we do not set aside a determination on the ground that an

opposite conclusion would have been equally or more reasonable, we do not reweigh

conflicting evidence, and we resolve reasonable doubts in favor of the findings and

decision.  (*Sierra Club*, at p. 512; *Berkeley Keep Jets Over the Bay Com. v. Board of Port*

*Commissioners* (2001) 91 Cal.App.4th 1344, 1356.)  Further, we presume the challenged

EIR is adequate.  The party challenging the EIR bears the burden of proving it is

inadequate or that insufficient evidence supports one or more of its conclusions.  (*Rialto*

*Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 924-925

(*Rialto*); *Protect the Historic Amador Waterways v. Amador Water Agency* (2004) 116

Cal.App.4th 1099, 1106; *Al Larson Boat Shop, Inc. v. Board of Harbor Commissioners*

(1993) 18 Cal.App.4th 729, 740 (*Al Larson*).)

DISCUSSION

I

Appellants contend the EIR improperly included greenhouse gas emissions and

criteria pollutants from the Teichert Esparto and Teichert Schwarzgruber mining

operations as part of the environmental baseline.

A

As explained in the draft EIR, criteria pollutants are pollutants for which national

or state ambient air quality standards have been established.  Greenhouse gases trap heat

---

[2]  California Code of Regulations, title 14, section 15000 et seq.

in the Earth's atmosphere.  The draft EIR describes criteria pollutant and greenhouse gas emissions from existing agricultural, mining and aggregate processing activities.  It discloses that it uses existing emissions from agricultural activities at the project site, mining operations at Teichert Esparto and Teichert Schwarzgruber, and processing activities at Teichert Esparto and a Teichert processing plant in Woodland, California (Teichert Woodland), as the environmental baseline for analyzing the effects of the project's predicted criteria pollutant and greenhouse gas emissions.  Tables 4.3-10 and 4.3-19 of the draft EIR compare greenhouse gas emissions and criteria pollutants from existing agricultural, mining, and processing activities with predicted emissions from the project.

Yolo County approved the Teichert Esparto operation in December 1996 for a maximum term of 30 years and a maximum annual production rate of 1,176,471 tons mined.  According to the draft EIR, the Teichert Esparto permit expires on January 1, 2028.  The Teichert Schwarzgruber operation was approved in November 2012 for a maximum term of 30 years and a maximum annual production rate of 1,176,471 tons mined.  Mining at Teichert Schwarzgruber was anticipated to be completed in 2021, depending on market demand.  The project  would transfer the annual production allotment from Teichert Esparto and Teichert Schwarzgruber to Teichert Shifler when mining activities at Teichert Esparto and Teichert Schwarzgruber cease.

Appellants contend the baseline used in the EIR is inaccurate because it includes emissions from Teichert Esparto and Teichert Schwarzgruber even though those operations will cease on January 1, 2028, or when the maximum amount of removal is reached.  According to appellants, Teichert Esparto and Teichert Schwarzgruber permits are tied to those locations only.  Those arguments are nearly identical to comments to the draft EIR submitted by the Sierra Club Yolano Group (the Yolano Group).  The Yolano Group asserted that the draft EIR did not properly analyze the impacts of criteria pollutant and greenhouse gas emissions related to the applicable standards of

6

significance, a phrase appellants also use. The Yolano Group urged that emission entitlements for Teichert Esparto and Teichert Schwarzgruber will expire in January 2028 and cannot be transferred. Yolo County responded that the draft EIR used existing conditions as the environmental baseline and the existing conditions included emissions from operations at the project site and Teichert Esparto, Teichert Schwarzgruber, and Teichert Woodland. Yolo County said that in considering the project's impacts, the EIR accounted for the transfer of production tonnage, which was a component of the project, and emissions from the transferred tonnage allotment.

B

Environmental baseline refers to the physical conditions at the site of a proposed project. (*Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 234 Cal.App.4th 214, 248 (*Center for Biological Diversity*).) Comparing the existing physical conditions with the physical conditions predicted to exist after a proposed project is implemented, a lead agency can determine whether the project may cause environmental effects and whether those effects are significant under CEQA. (*Association of Irritated Residents v. Kern County Bd. of Supervisors* (2017) 17 Cal.App.5th 708, 724 (*Association of Irritated Residents*).) If the description of the environmental baseline is inaccurate, incomplete or misleading, the EIR cannot adequately analyze the environmental impacts of the proposed project. (*Cleveland National Forest Foundation v. San Diego Assn. of Governments* (2017) 17 Cal.App.5th 413, 439-440; see *San Franciscans for Livable Neighborhoods v. City and County of San Francisco* (2018) 26 Cal.App.5th 596, 615.)

Typically, the baseline for environmental analysis is the existing conditions of the environment at the time the notice of preparation is published, from both a local and regional perspective. (Guidelines, §§ 15125, subd. (a), 15126.2, subd. (a); *Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 455; *Center for Biological Diversity, supra*, 234 Cal.App.4th at p. 249.)

7

Where environmental conditions vary over time, it is necessary to consider conditions over a range of time. (*San Francisco Baykeeper, Inc. v. State Lands Com.* (2015) 242 Cal.App.4th 202, 217-218 [dredge mining of sand]; *Pfeiffer v. City of Sunnyvale City Council* (2011) 200 Cal.App.4th 1552, 1570-1573 [traffic conditions]; see *Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 327-328 (*Communities for a Better Environment*) [petroleum refinery production].) "[A]n agency enjoys the discretion to decide, in the first instance, exactly how the existing physical conditions without the project can most realistically be measured, subject to review, as with all CEQA factual determinations, for support by substantial evidence." (*Communities for a Better Environment,* at p. 328.)

The draft EIR did not depart from the norm. Unlike the EIR in *Communities for a Better Environment*, which used the maximum production authorized under existing permits instead of actual production as the analytical baseline, the draft EIR in this case used actual, existing criteria pollutants and greenhouse gas emissions as the baseline for analyzing the project's environmental impacts. (*Communities for a Better Environment, supra*, 48 Cal.4th 310 at pp. 318, 322.) Inasmuch as the existing conditions at the time of the notice of publication included emissions from agricultural activities at the project site, processing at Teichert Esparto and Teichert Woodland, and mining activities at Teichert Esparto and Teichert Schwarzgruber, it was proper for Yolo County to use those emissions as the baseline for environmental analysis. (Guidelines, §§ 15125, subd. (a), 15126.2, subd. (a); *Association of Irritated Residents, supra*, 17 Cal.App.5th at p. 724 [stating that baseline measures the state of the environment absent the project].) The draft EIR and Yolo County's response to the comment by the Yolano Group provide substantial evidence supporting the EIR's identification of the existing physical conditions for criteria pollutant and greenhouse gas emissions.

Appellants contend that the Teichert Esparto and Teichert Schwarzgruber permits cannot be transferred. But appellants do not cite any legal authority for their assertion

8

and do not establish abuse of discretion on that basis. (*Rialto, supra*, 208 Cal.App.4th at pp. 924-925 [stating that the party challenging the EIR bears the burden of proving the EIR is inadequate]; *Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1 [holding that a contention not supported by any citation to authority is forfeited].) In addition, although appellants claim the permits, agreements or entitlements for Teichert Esparto and Teichert Schwarzgruber do not allow a transfer of emissions, the portion of the record cited -- an e-mail from the Yolano Group to a Yolo County staff member -- does not state facts supporting the claim.

II

Appellants next argue the EIR does not adequately address the potentially significant impacts of an increase in methylmercury in the reclaimed lake.

The draft EIR and response to comments to the draft EIR explained that mercury was present in the Cache Creek watershed because of mercury mining in the upper watershed in and around Lake County and subsequent natural flood deposition downstream, and the State of California and Yolo County had been closely monitoring the mercury issue for decades. Yolo County disclosed that there was no substantive human or wildlife health risk related to mercury in the soil, but there were concerns about mercury in reclaimed lakes. As explained in the final EIR, approximately 91 acres of mined land would be reclaimed to a lake.

Although the EIR did not explain what methylmercury is, how it is formed, or how it bioaccumulates in fish, the EIR did describe what would be done to monitor, identify, and respond to an increase in methylmercury in the reclaimed lake. According to the draft EIR, the reclaimed lake must comply with specified regulations, including requirements for monitoring mercury concentration in fish tissue, expanded analyses to identify and assess potential factors linked to elevated methylmercury production and/or bioaccumulation, and development of a lake management plan to be approved by the County Administrator if results exceed specified thresholds. Potential methods to reduce

9

mercury concentration in fish tissue could include the addition of oxygen to, or the physical mixing of, anoxic bottom waters; the alteration of water chemistry; and the removal or replacement of affected fish populations. The draft EIR stated that lake management activities must include a recommendation for continued monitoring and reporting and be appropriate to the phase of the operation. If activities under a lake management plan do not demonstrate declining mercury levels, further specified obligations would apply.

The response to comments to the draft EIR further explained that regulations require ongoing monitoring of mercury levels in Cache Creek for comparison to monitored mercury levels in reclaimed lakes, and fish in reclaimed lakes have been monitored annually for methylmercury pursuant to those requirements. The response to comments is part of the final EIR. (Guidelines, § 15362, subd. (b); *Cleveland National Forest Foundation v. San Diego Assn. of Governments* (2017) 3 Cal.5th 497, 516-517.) Yolo County explained that if levels of concern are identified in fish from reclaimed lakes, remedial actions will be required. The draft and final EIRs adequately address the potential increase of methylmercury and its bioaccumulation in the reclaimed lake.

In addition, the record shows that the public was informed about the possible increase in methylmercury and its bioaccumulation. A written staff report regarding the project, prepared for a January 11, 2022 Board public meeting, described the presence of mercury in the Cache Creek area, the monitoring and reporting requirements of the Cache Creek Area Plan, and the problem of methylmercury in reclaimed lakes. During the meeting, Yolo County staff member Elisa Sabatini reported on mercury monitoring as part of the Cache Creek Area Plan and available remedial actions if methylmercury in lake fish exceeds ambient levels in the watershed. Sabatini also described the results of various studies relating to mercury and the status of required Cache Creek Area Plan actions. Dr. Darell Slotton, an expert on mercury bioaccumulation and a consulting expert on the Cache Creek Area Plan, also provided information to the Board about

10

methylmercury and bioaccumulation of mercury in fish. He explained how mercury is converted into methylmercury and how methylmercury enters the food chain and becomes concentrated as it moves up the food chain and into fish. He explained the findings from analyses of fish samples across the Cache Creek watershed, the monitoring of off-channel mining ponds in the Cache Creek area, findings from monitoring data, and how the findings triggered expanded testing at three pond sites. Dr. Slotton responded to questions and concerns from board members, including a concern that methylmercury was a potent neurotoxin that adversely affected neurological development in children. Dr. Slotton and a County staff member explained that removal of fish and filling of reclaimed ponds were possible solutions if a management plan did not adequately remediate a methylmercury problem.

Appellants cite reports by Dr. Slotton and Shaun Ayers about fish mercury testing at certain off-channel, wet-pit mining ponds in the Cache Creek area that did not involve the Teichert Shifler site, and appellants criticize the EIR for not discussing those reports. But the 2020 Slotton-Ayers report concluded that a realistic mitigation approach to methylmercury production could not be developed without site-specific information, and the draft EIR explained that the reclaimed lake for the project would not exist until after mining at Teichert Shifler ceased.

The party challenging an EIR must show an error that misled the agency or the public, understated a problem, or caused other prejudice. (*Al Larson, supra*, 18 Cal.App.4th at pp. 748-749.) Appellants have not shown how omission of information from the Slotton-Ayers reports misled decision makers or the public and precluded informed decision making and public participation as to the project. Appellants have not made the required showing with regard to omission of the Slotton-Ayers reports.

The contention regarding methylmercury in the reclaimed lake lacks merit.

11

III

Appellants also contend that substantial evidence does not support the mitigation measure 4.2-1(a) conclusion that 113 acres of prime farmland, equivalent in quality and capacity to existing prime farmland permanently converted as a result of the project, will be reclaimed.

A significant portion of the project site is designated as prime farmland. The project includes activities to reclaim a portion of the mined area to agricultural uses. However, the draft EIR recognized that impacts related to the conversion of prime farmland to mining uses would be significant and unavoidable.

When an EIR identifies significant effects on the environment that would occur if a project is approved or carried out, the EIR must describe feasible measures that could minimize the significant effects. (§ 21100, subd. (b)(3); Guidelines, § 15126.4, subd. (a)(1); see § 21081, subd. (a); Guidelines, § 15091, subd. (a).) And the public agency must mitigate or avoid the significant effects the project would have on the environment. (§ 21002.1, subd. (b).) We review for substantial evidence an agency's conclusion that the mitigation measures identified in an EIR will reduce the adverse effects of the project. (*Laurel Heights Improvement Assn., supra*, 47 Cal.3d at p. 407; *King & Gardiner Farms, LLC v. County of Kern* (2020) 45 Cal.App.5th 814, 866; *Habitat & Watershed Caretakers, supra*, 213 Cal.App.4th at p. 1306.)

Appellants appear to contend that mitigation measure 4.2-1 requires the soils in mined areas to be reclaimed to the quality and capacity of pre-mining, prime-farmland soils. The mitigation measure does not specifically reference soil condition, but it does require Teichert to reclaim 113.2 acres "of Prime Farmland onsite, equivalent in quality and capacity to existing Prime Farmland permanently converted as a result of the project." The draft EIR stated the reclamation plan for the project requires reclaimed agricultural land to have productivity that is equal to or greater than existing productivity. As explained in the draft and final EIR, the Surface Mining Reclamation Ordinance,

12

which is part of the regulations that implement the Cache Creek Area Plan, requires "all off-channel, prime agricultural land . . . at the time that mining commences . . . [to] be reclaimed to an agriculturally productive state equal to or greater than that which existed before mining commenced." Moreover, under the Surface Mining and Reclamation Act (SMARA [§ 2710 et seq.]) Performance Standards for Prime Agricultural Land Reclamation, "[r]eclamation shall be deemed complete when productive capability of the affected land is equivalent to or exceeds, for two consecutive crop years, that of the premining condition or similar crop production in the area." (Cal. Code of Regs., tit. 14, § 3707, subd. (c).)

Substantial evidence supports Yolo County's finding that mitigation measure 4.2-1 would mitigate impacts on agricultural resources. The Agricultural Reclamation Feasibility Study, which is appended to the final EIR, concludes that with the application of irrigation and fertilization practices commonly used in the region, yields from the reclaimed agricultural land could reasonably be expected to meet regulatory performance criteria, based on soil survey data and analysis of soils, monitoring of soil temperatures at various sites, and crop production and value data. That conclusion is supported by the report of expert Greg House, which was discussed in the final EIR.

House reported that results from his study of three reclaimed agricultural fields showed those fields met the SMARA two-year standard of productivity, provided strong indications that they would meet the standard soon, or demonstrated that the required standard could be achieved. House stated that crops grown on reclaimed agricultural land could reach desired productivity standards.

The House report and the Agricultural Reclamation Feasibility Study provide substantial evidence supporting the goal in mitigation measure 4.2-1. (*Oakland Heritage Alliance v. City of Oakland* (2011) 195 Cal.App.4th 884, 903-904.)

13

IV

Appellants further challenge the award to the County of record preparation costs. They contend the County cannot recover those costs because appellants elected to prepare the record pursuant to section 21167.6, subdivision (b)(2). They also argue the amount of the award is excessive and not supported by documentation.

A

The interpretation of section 21167.6, and whether a claimed cost is recoverable, are questions of law which we review de novo. (*Coalition for Adequate Review v. City and County of San Francisco* (2014) 229 Cal.App.4th 1043, 1050-1051 (*Coalition for Adequate Review*).)

Section 21167.6 governs the preparation and certification of the administrative record in a CEQA case. Subdivision (b)(2) of the statute authorizes a writ petitioner to elect to prepare the administrative record instead of asking the public agency to prepare it. (§ 21167.6.) But here, appellants asked Yolo County to produce the documents comprising the administrative record. The administrative record consists of 29,745 pages. In addition, the public agency must certify the accuracy of the administrative record within the time period described in subdivision (b)(1). (§ 21167.6, subd. (b)(2).) Because section 21167.6, subdivision (b)(2) refers to subdivision (b)(1), the two must be read together. (*Coalition for Adequate Review, supra*, 229 Cal.App.4th at p. 1055.) Section 21167.6, subdivision (b)(1) addresses the payment of costs. (*Coalition for Adequate Review,* at pp. 1052, 1058; see generally *Black Historical Society v. City of San Diego* (2005) 134 Cal.App.4th 670, 677.) That appellants elected to prepare the record under section 21167.6, subdivision (b)(2) did not mean the County had no costs associated with preparation of the administrative record, and it did not preclude an award of record preparation costs to the County. (*Landwatch San Luis Obispo County v. Cambria Community Services Dist.* (2018) 25 Cal.App.5th 638, 642-644; *Coalition for*

14

*Adequate Review,* at p. 1055; *St. Vincent's School for Boys, Catholic Charities CYO v. City of San Rafael* (2008) 161 Cal.App.4th 989, 1016-1017 (*St. Vincent's*).)

In general, and except as otherwise provided by statute, a prevailing party is entitled to recover costs. (Civ. Proc. Code, § 1032, subd. (b); see *Chaparral Greens v. City of Chula Vista* (1996) 50 Cal.App.4th 1134, 1151-1152.) Appellants do not dispute that the County prevailed in the writ proceeding. Section 21167.6 does not provide that a public agency prevailing in a CEQA action may not recover reasonable costs associated with the preparation of the administrative record that were actually incurred.

Code of Civil Procedure section 1094.5, referenced in the writ petition, further provides that except when otherwise prescribed by statute, the cost of preparing the record shall be borne by the petitioner. (Code Civ. Proc., § 1094.5, subd. (a).) If an expense associated with preparation of the record has been borne by the prevailing party, the expense shall be recoverable as costs. (Code Civ. Proc., § 1094.5, subd. (a); *The Otay Ranch, L.P. v. County of San Diego* (2014) 230 Cal.App.4th 60, 68-72 (*The Otay Ranch, L.P.*).) Under section 21167.6 and Code of Civil Procedure sections 1032 and 1094.5, appellants must pay any reasonable costs the County actually incurred associated with the preparation of the administrative record.

Appellants also challenge the cost award on the ground that Yolo County produced administrative record documents pursuant to a Public Records Act request and there is no basis for the recovery of staff and consultant time associated with that production. But the court in *St. Vincent's* rejected a similar attempt to avoid payment of costs. (*St. Vincent's, supra*, 161 Cal.App.4th at p. 1019, fn. 9.)

B

Appellants further urge that the amount of the cost award is excessive and not supported by documentation.

Labor costs incurred to prepare an administrative record is recoverable under section 21167.6, subject to trial court review for necessity and reasonableness. (Code

15

Civ. Proc., § 1033.5, subd. (c); *The Otay Ranch, L.P., supra*, 230 Cal.App.4th at pp. 68-70; *Coalition for Adequate Review, supra*, 229 Cal.App.4th at p. 1059; *River Valley Preservation Project v. Metropolitan Transit Dev. Bd.* (1995) 37 Cal.App.4th 154, 182.) A verified memorandum of costs is prima facie evidence of the necessity and reasonableness of cost items that appear to be proper charges on their face. (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1266-1267 (*Jones*).) A party need not provide copies of bills or other documents with the memorandum of costs. (*Id.* at p. 1267.) Where a statute expressly allows a cost item and the cost appears proper on its face, the party seeking to tax costs must demonstrate that the challenged cost was unnecessary or unreasonable. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131; *County of Kern v. Ginn* (1983) 146 Cal.App.3d 1107, 1113-1114.)

The County sought an award of $3,813.45 in costs associated with preparation of the administrative record. That amount consisted of the following staff time and other charges: Natural Resources Manager Elisa Sabatini (3 hours at $130.90/hour); Lead Consultant Heidi Tschudin (6.75 hours at $229/hour); Legal Secretary Stephanie Richburg (6.5 hours at $100/hour); Legal Secretary Kendra Ledoux (7 hours at $100/hour); and AmeriTechnology Group for e-mail conversion ($525). Appellants did not show how the claimed costs were excessive, such as by showing that the number of hours or the hourly rates were unreasonable. Appellant's motion to tax costs was insufficient to rebut the County's prima facie showing. (*Jones, supra*, 63 Cal.App.4th at p. 1266.)

As we have explained, appellants asked Yolo County to produce the documents comprising the administrative record. The administrative record consists of 29,745 pages. The staff and consultant time and costs incurred to produce an administrative record of that size (23.25 hours; 13 cents per page) is not unreasonable. Appellants did not meet their initial burden on the motion, and Yolo County was not required to submit

16

supporting documents in that circumstance.  (*Jones, supra*, 63 Cal.App.4th at p. 1267.)

Appellants have not shown that the awarded amount was unsupported or unreasonable.

## DISPOSITION

The judgment, and the order denying appellants' motion to tax costs, are affirmed.

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____/S/_____

MAURO, J.

We concur:

_____/S/_____

EARL, P. J.

_____/S/_____

MESIWALA, J.

Filed 10/3/24

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| YOLO LAND AND WATER DEFENSE et al., | |
| Plaintiffs and Appellants, | C099086 |
| v. | (Super. Ct. No. CV2022-0277) |
| COUNTY OF YOLO et al., | ORDER MODIFYING OPINION AND GRANTING REQUESTS FOR PUBLICATION |
| Defendants and Respondents; | |
| TEICHERT INC., | [NO CHANGE IN JUDGMENT] |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Yolo County, David Rosenberg, Judge. Affirmed.

Law Office of Donald B. Mooney and Donald B. Mooney, for Plaintiffs and Appellants.

Philip J. Pogledich and Eric May, County Counsel; Downey Brand, Andrew M. Skanchy and Samuel D. Bacal-Graves, for Defendants and Respondents.

Taylor, Wiley & Keasling, John M. Taylor, Jesse J. Yang, Matthew S. Keasling, and Marissa C. Fuentes, for Real Party in Interest and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of the Standard of Review section, and parts I through III and IV.B of the Discussion.

1

THE COURT:

It is ordered that the opinion filed in this case on September 13, 2024, be modified as follows:

On page 2, delete the last paragraph beginning with "We conclude" and replace with the following paragraphs:

In the unpublished portion of this opinion, we conclude (1) it was proper for the EIR to use existing conditions as the baseline for environmental analysis, and substantial evidence supports Yolo County's determination of the existing conditions; (2) the EIR adequately addressed the potentially significant impacts of the potential for an increase in methylmercury in the reclaimed lake; (3) substantial evidence supports the goal in mitigation measure 4.2-1 to reclaim mined land to a state equivalent in quality and capacity to existing prime farmland; and (4) as to the second part of appellants' fourth contention, appellants have not shown that the awarded amount was unsupported or unreasonable.

In the published portion of this opinion, we address the first part of appellants' fourth contention and conclude it was proper to award the County costs for preparation of the administrative record.

On page 14, part IV of the Discussion, first full paragraph, first sentence, remove the word "further" so that the sentence now reads:

Appellants challenge the award to the County of record preparation costs.

This modification does not change the judgment.

The opinion in the above-entitled matter filed on September 13, 2024, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

2

FOR THE COURT:

_____/S/_____
MAURO, Acting P. J.

_____/S/_____,
MESIWALA, J.