Filed 9/29/14

CERTIFIED FOR PARTIAL PUBLICATION[*]


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE OTAY RANCH, L.P. et al., | D064809 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00083418-CU-WM-CTL) |
| COUNTY OF SAN DIEGO, | |
| Defendant and Respondent; | |
| FLAT ROCK LAND COMPANY, LLC, Real Party in Interest and Respondent. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Affirmed.


Gatzke Dillon & Ballance, Mark J. Dillon, Stephen F. Tee and Stephen A. Sunseri, for Plaintiffs and Appellants.

Caldarelli Hejmanowski & Page and Marisa Janine-Page, for Defendant and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and III.

INTRODUCTION

The primary issue in this appeal is whether, after a voluntary dismissal of a petition for writ of mandate, the trial court erred by allowing the County of San Diego (the County) to recover actual labor costs incurred for an attorney and paralegals to prepare an administrative record. Finding no error, we affirm the order and judgment.

Preliminarily, however, we dismiss the appeals of The Otay Ranch, L.P. (Otay Ranch), a cancelled limited partnership, and Sky Communities, Inc. (Sky Communities), a suspended corporation, for lack of capacity. We deny the motion to dismiss the appeal of the remaining appellant, Sky Vista, Inc. (Sky Vista), which is an active corporation.

FACTUAL AND PROCEDURAL BACKGROUND

A

The County approved a "Remedial Action Plan" (RAP) for a remediation project at the former Otay Skeet and Trap Shooting Range (Project) in Chula Vista, California, and adopted a "Final Mitigated Negative Declaration" (MND) on September 12, 2012. The Project involved "investigation and remediation of surface and subsurface areas impacted from historic shooting range activities" and included "remediation of soil impacted by lead and polynuclear aromatic hydrocarbons (PAHs), removal of 'White Material['], as well as the removal of target debris and wood debris from the site."

The Otay Ranch, Sky Communities, and Sky Vista (collectively, Otay Ranch parties) are the former owners of the shooting range. They filed a petition for writ of mandate in October 2012 alleging the County (1) did not comply with the requirements of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000

2

et seq.) when it approved and adopted the MND and RAP without preparing an environmental impact report and (2) did not comply with Health and Safety Code section 25356.1 in approving the RAP. The Otay Ranch parties also sought declaratory and injunctive relief. Real party in interest, Flat Rock Land Company, LLC (Flat Rock), is the current owner of the shooting range property and project applicant, which is undertaking voluntary remediation of the site before future development.

B

The Otay Ranch parties elected to prepare the record of the proceedings, subject to certification of accuracy by the County. (Pub. Resources Code, § 21167.6, subd. (b)(2).) After the court denied the Otay Ranch parties' application for a temporary restraining order to halt the remediation work, the parties stipulated to extend the deadline for preparation and certification of the administrative record to the end of January 2013. The court set a briefing schedule and ordered a hearing date for July 12, 2013.

In January, the parties stipulated again to extend the deadline for certification of the record of proceedings to February 8, 2013, and later agreed to a further informal extension. The parties met on February 7, 2013, to discuss the proposed CEQA record. According to counsel for the County, over half of the documents listed in the proposed index were documents not properly part of the CEQA record and the index omitted hundreds of documents that were part of the CEQA record. After this meeting, the Otay Ranch parties voluntarily dismissed the CEQA cause of action.

The Otay Ranch parties filed an amended petition in April 2013 alleging a cause of action for lack of compliance with the Health and Safety Code and a request for

3

declaratory relief. The Otay Ranch parties did not file the administrative record with the amended petition or indicate when the administrative record would be filed.

On April 25, 2013, the court denied Otay Ranch's request for an order shortening time to hear a motion to stay the briefing and hearing in this case pending the outcome of the trial in another case involving environmental clean-up of the shooting range.[1] During the ex parte hearing, the court inquired about the status of the administrative record. Since the Otay Ranch parties had not prepared the record, counsel for the County stated the County would undertake preparation of the administrative record and would file it with its answer, which was due within 10 days. The Otay Ranch parties did not object to the County preparing the record nor did it challenge the County's assertion the Otay Ranch parties would be obligated to pay the costs of preparing the record.

C

Because the County department responsible for maintaining the files associated with the project did not have the manpower or resources to prepare the administrative record, it asked the outside law firm representing it in the litigation to prepare the record. Counsel for the County worked with James G. Clay, the County staff member most knowledgeable regarding the project, to gather and electronically reproduce the pertinent portions of the administrative record. Although the County maintained the project files in

---

[1] This is one of several cases pending in the San Diego Superior Court concerning the environmental cleanup of the former shooting range. (*Otay Land Company, et al. v. U.E. Limited, L.P. et al.* (2006, No. GIC 869480); *Otay Land Company, et al. v. U.E. Limited, et al.* (2009, 37-2009-00101976-CU-OR-CTL); *Otay Land Company, et al. v. U.E. limited, et al.* (2012, 37-2012-00104941-CU-BT-CTL).)

4

a manner allowing the County to perform its responsibilities on the case over the previous decade, parts of the file were segregated, duplicated and disseminated to various staff, divisions and departments.

Counsel for the County initially tasked preparation of the administrative record to experienced paralegals, document clerks and an electronic record vendor. However, as the work unfolded, it became necessary for the attorney to become actively involved in reviewing and organizing the record. Given the technical complexity of the documents, the scope of the record and the manner in which the documents were maintained, the attorney hired by the County was the only person who understood the interplay of the various versions of the documents as well as which documents should be included in the administrative record and which should not. According to Mr. Clay, the work required someone with specific knowledge and a comprehensive understanding of the project over the previous decade to reassemble various documents and technical reports with supporting documentation to prepare an adequate administrative record, but the County did not have adequate staffing to undertake this effort.

The attorney and the paralegals worked extended hours and through the weekend to prepare the record. The County filed and served the administrative record on May 8, 2013, consisting of 326 documents totaling more than 18,000 pages. The following day, May 9, 2013, the Otay Ranch parties dismissed the entire action.

D

The County submitted a memorandum of costs seeking recovery of $66,638.14 for preparation of the administrative record. The Otay Ranch parties moved to tax the

5

County's cost, requesting the court disallow $59,545 for attorney and paralegal time incurred to prepare the administrative record. The Otay Ranch parties argued, as they do on appeal, attorney fees should not be included in a cost award for preparation of the administrative record because attorney fees are not authorized in this action by contract, statute or law. The Otay Ranch parties did not object to $7,093.14 in record preparation costs for time spent by law firm document clerks and county staff or to costs associated with producing the electronic record through an outside vendor.

The County opposed the motion arguing the "labor costs of 'persons with specialized knowledge,' are recoverable when they are reasonably necessary" to prepare an administrative record. The County presented declarations from Mr. Clay, defense counsel and a paralegal explaining the process of assembling the administrative record and why it was reasonably necessary to expend attorney and paralegal time to prepare the administrative record. The County also submitted supporting billing statements.

Noting the Otay Ranch parties failed to prepare the administrative record in the six months since the action was filed, the trial court ruled the Otay Ranch parties were responsible for the costs of preparing the record. The court ruled a recoverable cost incurred in preparing the record "must include the labors of the County" in preparing the record. Relying on this court's holding in *River Valley Preservation Project v. Metropolitan Transit Development Bd.* (1995) 37 Cal.App.4th 154, 181 (*River Valley*) that labor costs incurred for preparing an administrative record are allowable if "necessarily incurred and reasonable," including labor for "persons with specialized knowledge," (*ibid.*), the trial court ruled "it was reasonably necessary" for the County's

6

attorney and her paralegals to prepare the administrative record since the County "did not have the resources or experienced personnel" to prepare the record.

The court allowed the County to recover only attorney and paralegal time expended after the County decided to prepare the record on April 25, 2013, and disallowed requested time prior to that date. Therefore, the court awarded $37,528.14 in costs for preparation of the administrative record, which included $30,435 in labor costs for the County's attorney and paralegals (74.1 attorney hours at $350 per hour and 67.1 paralegal hours at $100 per hour) plus $7,093.14 in unchallenged costs. The court disregarded as untimely new evidence submitted in reply regarding an indemnity agreement between the County and Flat Rock.

DISCUSSION

I

*Motion to Dismiss*

Before reaching the merits of the appeal, we deal first with the County's motion to dismiss, which contends: (1) Otay Ranch lacks capacity to bring the appeal because it is a cancelled limited partnership; (2) Sky Communities lacks capacity to bring the appeal because it is a suspended corporation; and (3) Sky Vista should be dismissed because the three businesses are so intertwined dismissal of the entire appeal is necessary to prevent Otay Ranch and Sky Communities from indirectly benefitting from the appeal. We dismiss the appeal as to Otay Ranch and Sky Communities, but decline to dismiss as to Sky Vista.

7

## A

### *Otay Ranch*

In response to our request for supplemental briefing regarding the impact of Otay Ranch's filing of a certificate of cancellation of its limited partnership, Otay Ranch argued, "a corporation's dissolution is best understood not as its death, but merely as its retirement from active business." (*Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1190.) Relying on a statute applicable to corporations it also argued, " '[n]o action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up.' " (Corp. Code, § 2010, subd. (b).)

We agree a "limited partnership continues after dissolution only for the purpose of winding up its activities." (Corp. Code, § 15908.03, subd. (a).) In the process of winding up its activities, a dissolved limited partnership "(1) may amend its certificate of limited partnership to state that the limited partnership is dissolved, preserve the limited partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, transfer the limited partnership's property, settle disputes by mediation or arbitration, file a certificate of cancellation as provided in [Corporations Code] Section 15902.03, and perform other necessary acts; and (2) shall discharge the limited partnership's liabilities, settle and close the limited partnership's activities, and marshal and distribute the assets of the partnership." (Corp. Code, § 15908.03, subd. (b).)

8

However, Corporations Code section 15902.03 provides, "[a] dissolved limited partnership *that has completed winding up* shall deliver to and on a form prescribed by the Secretary of State for filing a certificate of cancellation . . . ." (Italics added.) A certificate of cancellation gives constructive notice of the termination of the limited partnership. (Corp. Code, § 15901.03, subd. (d)(3).) "That notice effectively terminates any apparent authority to bind the limited partnership." (U. Limited Partnership Act Com. com., 24A West's Ann. Corp. Code (2014 ed.) foll. § 15902.03, p. 266.)

Here, Otay Ranch filed a certificate of cancellation on December 24, 2012, in which the general partners executed a statement of cancellation under penalty of perjury stating, "the above-named California limited partnership *has completed winding up* its affairs and is cancelled." (Some capitalization omitted, italics added.) The Certificate of Status from the California Secretary of State certifies, "[t]he records of this office indicate [Otay Ranch] filed a Certificate of Cancellation on December 24, 2012, and the entity's powers, rights and privileges have ceased." Applying the plain meaning of the statutes (*In re C.H.* (2011) 53 Cal.4th 94, 101), and taking Otay Ranch's general partners at their word that the limited partnership completed winding up its affairs as of the filing of the certificate of cancellation on December 24, 2012, we conclude Otay Ranch's current appeal cannot be deemed part of the winding up process. As a result, we dismiss the appeal of Otay Ranch.

9

B

*Sky Communities*

"[A] 'corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes.' " (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 324 (*Bourhis*).) However, "[a] corporation whose powers have been suspended may apply with the Franchise Tax Board for reinstatement after satisfying its obligations. ([Rev. & Tax. Code,] § 23305.) If the statutory requirements are met, the Franchise Tax Board issues a 'certificate of revivor.' ([Rev. & Tax. Code,] § 23305.) 'Upon the issuance of the certificate [of revivor] by the Franchise Tax Board the taxpayer therein named shall become reinstated . . . .' ([Rev. & Tax. Code,] § 23305a.)" (*Bourhis*, *supra*, 56 Cal.4th at p. 324.)

The California Franchise Tax Board suspended the powers, rights and privileges of Sky Communities on September 3, 2013, after the voluntary dismissal of the petition but before the entry of the cost order at issue in this appeal. In the certificate of interested entities or persons submitted with the opening brief, counsel for appellants stated, "while [Sky Communities], is currently a suspended corporation, it may be reinstated." Counsel further stated, "[Sky Communities], is taking steps to be reinstated."

In opposition to the motion to dismiss, appellants argued extensively the appeal should not be dismissed based on *Bourhis*, *supra*, 56 Cal.4th 320, in which the Supreme Court held a suspended corporation may proceed with an appeal filed during its suspension because subsequent revival of the corporate status retroactively validates an earlier notice of appeal. (*Id.* at p. 323.) They also argued a notice of appeal filed while a

10

corporation is suspended is merely a procedural defect, not a substantive defect affecting jurisdiction and dismissals based on lack of capacity are disfavored.

*Bourhis* is not applicable. In response to our request for an update regarding the status of the suspension, Sky Communities informed us the Franchise Tax Board has not yet issued a certificate of revivor. Therefore, as a currently suspended company, Sky Communities is disqualified from exercising any right, power or privilege and, therefore, lacks the capacity to pursue this appeal. (Rev. & Tax. Code § 23301; *Bourhis*, *supra*, 56 Cal.4th at p. 324; *Laurel Crest, Inc. v. Vaughn* (1969) 272 Cal.App.2d 363, 364 (*Laurel Crest*) [an appeal of a suspended corporation should be dismissed under the law where there was no reinstatement]; see *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 310, 312 [assignee of a judgment lacked capacity to enforce the judgment because the assignor's corporate powers were suspended at the time of assignment and were not revived].) Accordingly, on the record before us, we dismiss the appeal of Sky Communities.

C

*Sky Vista*

Sky Vista is an active California corporation. The County argues the three entities are so intertwined dismissal of Sky Vista, Inc.'s appeal is necessary to prevent Otay Ranch and Sky Communities "from gaining indirectly any advantage of this appeal."

The County cites *Laurel Crest*, *supra*, 272 Cal.App.2d at p. 365 for the proposition corporate appellants may be prevented from prosecuting an appeal where an adequate showing is made a dismissed entity would gain an improper advantage of an appeal based

11

on the relationship between the dismissed entity and the remaining entity or entities. No such showing was made in *Laurel Crest* even though the complaint in that case alleged the entities were joint venturers. Recognizing " '[t]he "right of appeal is remedial, and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment," ' " the *Laurel Crest* court allowed the non-suspended entities to pursue their appeal. (*Ibid.*)

Similarly here, the County has not made an adequate showing to dismiss Sky Vista's appeal. Sky Vista was a general partner in Otay Ranch and counsel for the Otay Ranch parties represented to the trial court in another case Sky Vista's sole role was to serve as a partner in Otay Ranch. However, the operative petition for writ of mandate in this case alleges Sky Vista was one of three petitioners that had been or would be "directly and adversely affected by the Project as approved by the County" and it had a direct and beneficial interest in requesting compliance with the Health and Safety Code. The County cited no authority compelling the conclusion the business relationship between Sky Vista and the other entities legally requires dismissal of this appeal. Therefore, we deny the motion to dismiss as to Sky Vista.

II

*Cost for Preparing Administrative Record May Include*
*Attorney and Paralegal Labor*

Sky Vista contends the trial court abused its discretion in this case by including compensation for the time the County's retained counsel and paralegals spent to prepare the administrative record. It argues this amounts to an award of attorney fees, which are

12

not expressly authorized by contract, statute or law. The County contends the trial court properly exercised its discretion to allow recovery of attorney and paralegal time after determining the time was reasonable and necessary for preparation of the administrative record. We agree with the County.

A

The costs to prepare the administrative record for an administrative mandamus action are recoverable. Code of Civil Procedure section 1094.5, subdivision (a), provides "[e]xcept where otherwise prescribed by statute, the cost of preparing the record shall be borne by the petitioner" and "[i]f the expense of preparing all or any part of the record has been borne by the prevailing party, the expense shall be taxable as costs." Code of Civil Procedure section 1094.6, subdivision (c), specifies the contents of the administrative record and reiterates the petitioner must bear the cost of preparing the record stating, in relevant part, "[t]he local agency may recover from the petitioner its actual costs for transcribing or otherwise preparing the record."

In petitions alleging CEQA violations, Public Resources Code section 21167.6, subdivision (b)(1), requires payment of "any reasonable costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court."[2] The plaintiff or petitioner may elect to prepare the record in a CEQA case or to agree to an alternative method of preparing the record, subject to certification of accuracy by the

---

2     The word "reasonable" was added to subdivision (b)(1) of Public Resources Code section 21167.6 in 2002. (See Historical and Statutory Notes, 56B West's Ann. Pub. Resources Code (2007 ed.) foll. § 21167.6, p. 194; Stats. 2002, ch. 1121, § 4 (SB 1393).)

public agency. (Pub. Resources Code, § 21167.6, subd. (b)(2).) We construe similar statutes in light of one another. (*Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 366.)

The County asserts Code of Civil Procedure section 1094.6 requires an award of its "actual costs" without a determination of reasonableness or necessity. However, the County did not cross-appeal and does not ask us to decide this point because it contends where, as here, a public agency prepares the administrative record and is the prevailing party, it is entitled to costs the trial court finds to be "reasonably necessary" and "reasonable in amount" to prepare the administrative record. (Code Civ. Proc., §§ 1033.5, subd. (c)(1)-(4), 1094.5; see *Marlow v. Orange County Human Services Agency* (1980) 110 Cal.App.3d 290, 294-295 [trial court properly exercised its discretion in determining cost of a hearing transcript sought under Code Civ. Proc., § 1094.5 was reasonable and necessary].)[3]

"Whether a particular cost to prepare an administrative record was necessary and reasonable is an issue for the sound discretion of the trial court. [Citations.] Discretion is abused only when, in its exercise, the court 'exceeds the bounds of reason, all of the circumstances being considered.' [Citation.] The appellant has the burden of establishing

---

[3]     Code of Civil Procedure section 1033.5, subdivision (c) provides: "Any award of costs shall be subject to the following:  [¶] (1) Costs are allowable if incurred, whether or not paid.  [¶] (2) Allowable costs shall be *reasonably necessary* to the conduct of the litigation rather than merely convenient or beneficial to its preparation. [¶] (3) Allowable costs shall be *reasonable in amount*.  [¶] (4) Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." (Italics added.)

an abuse of discretion." (*River Valley*, *supra*, 37 Cal.App.4th at p. 181.) Where "the determination of whether costs should be awarded is an issue of law on undisputed facts, we exercise de novo review." (*City of Long Beach v. Stevedoring Services of America* (2007) 157 Cal.App.4th 672, 678.)

B

Courts have long recognized the labor costs incurred to prepare an administrative record are recoverable items of costs. In *Citizens for Quality Growth v. City of Mt. Shasta* (1988) 198 Cal.App.3d 433, the City presented evidence it did not have sufficient employees to prepare the record within the time required so it obtained assistance from a paralegal and a clerk from a private law firm to organize and index the documents. The trial court found the cost of preparation was necessarily incurred, but the appellate court reversed and remanded for the court to make a determination about whether the amount was reasonable. (*Id*. at pp. 447-448.)

In *River Valley*, we affirmed an order allowing recovery of labor costs for an engineer and a paralegal employed by the agency to collect and index an administrative record. (*River Valley, supra,* 37 Cal.App.4th at pp. 180-183.) We noted the "history and complexity" of that case "required a complete, organized and adequately indexed administrative record for the court's proper review, necessitating the expense of physical and organizational skills to accomplish this result." Under the circumstances, we concluded the trial court acted within its discretion when it found "it was reasonably necessary for persons with specialized knowledge" to prepare the administrative record. (*Id*. at p. 181.) We held a commonsense reading of the CEQA cost recovery statute

15

required costs for preparation of the administrative record to include time spent to prepare the record. Otherwise, it would defeat the statutory purpose by shifting the financial burden to the public agency. "[T]axpayers . . . should not have to bear the cost of preparing the administrative record in a lawsuit brought by a private individual or entity." (*Id*. at p. 182.)

In *St. Vincent's School for Boys, Catholic Charities CYO v. City of San Rafael* (2008) 161 Cal.App.4th 989, 1013, 1019, the appellate court affirmed an order awarding information technology fees and staff labor the City incurred to respond to petitioner's discovery demands to retrieve electronic data. The trial court did not award costs related to attorney efforts in preparing the record, but there was no challenge to the trial court's decision in that regard. (*Id*. at p. 1013.) In affirming the order, the court stated "where necessary to preserve the statutory purposes of cost containment and expediting CEQA litigation, the prevailing party in a CEQA action may recover 'reasonable costs or fees imposed for the preparation' [citation] of the record, even if the nonprevailing party elected to prepare the record." (*Id*. at p. 1019.)

More recently, in *California Oak Foundation v. Regents of University of California* (2010) 188 Cal.App.4th 227 (*California Oak*), the appellate court affirmed an order including labor time for a paralegal and other University staff in an award of costs for preparation of an administrative record. (*Id*. at pp. 294-295.) The court noted the paralegal assembled and indexed the documents in the record and counsel for the

16

University spent additional time reviewing and revising portions of the record.[4] Given the history and complex nature of the proceedings, the appellate court did not find it surprising "the University spent a great deal of time and expense ensuring the entire administrative record was prepared and copied in an appropriate manner." (*Id.* at p. 295.) The appellate court could not say "the trial court exceeded the bounds of reason in accepting as reasonable the hours and rates claimed by the University for performing these necessary tasks." (*Ibid*.)

The *California Oak* court distinguished *Hayward Area Planning Assn. v. City of Hayward* (2005) 128 Cal.App.4th 176, 184-185 (*Hayward*), which disallowed recovery of record preparation costs sought under the CEQA statute where the agency delegated the task to a third party interested in the litigation. In *Hayward*, the court observed courts have allowed public agencies to collect the labor costs of outside assistance when preparing an administrative record, including the use of a private law firm, but no court "condoned the unilateral delegation of the task to a party with an interest in the litigation." (*Hayward*, *supra*, at p. 184.) The *California Oak* court did not find *Hayward* controlling because the University prepared the record itself and did not improperly delegate record preparation to a third party. (*California Oak*, *supra*, 188 Cal.App.4th at p. 295.)

Similarly here, the County did not delegate preparation of the record to a third party. The County undertook preparation of the administrative record after months of

---

4     It is not clear from the court's discussion of the facts if attorney time was included in the cost award.

17

inaction on the part of the Otay Ranch parties, who initially elected to prepare the administrative record for their CEQA claim. Given the history and complexity of the project and how the documents were maintained, we cannot conclude the trial court exceeded the bounds of reason in determining it was "reasonably necessary" for the County's retained counsel and paralegals to prepare the administrative record since the County "did not have the resources or experienced personnel to prepare the [r]ecord."

Sky Vista does not challenge the labor costs charged for County staff or law firm document clerks to assist with preparation of the administrative record. It challenges only the labor costs incurred for an attorney and paralegals to prepare the record by arguing these costs constitute attorney fees. Under Sky Vista's analysis an attorney's labor for preparation of an administrative record could never be recovered, even if the hourly amount charged was de minimus.

Code of Civil Procedure sections 1094.5 and 1094.6 require a petitioner to pay "actual costs" and expenses of preparing the administrative record. Under the particular circumstances of this case where the trial court found it was reasonably necessary for the County to incur attorney and paralegal labor costs to prepare the administrative record within a short window of time, we see no reason to differentiate between those actual labor costs and actual labor costs for agency staff and document clerks to prepare an administrative record. Nor do we see a reason to differentiate between labor costs incurred by individuals directly employed by a public agency and those incurred by individuals employed by a private law firm retained by the agency, so long as the trial court determines, as it did here, the labor costs were reasonably and necessarily incurred

18

for preparation of the administrative record. To hold otherwise would undermine the statutory policy of shifting the costs and expenses of preparing an administrative record away from the public and to the private individual or entity bringing the lawsuit. (Code Civ. Proc., §§ 1094.5, subd. (a), 1094.6, subd. (c); see *River Valley*, *supra*, 37 Cal.App.4th at p. 182.)

We are not persuaded by Sky Vista's citation to *Dep't of Forestry & Fire Prot. v. Lebrock* (2002) 96 Cal.App.4th 1137. In that case, the court did not allow a prevailing party to recover attorney fees in an action filed against her by the California Department of Forestry to recover the costs of suppressing a fire originating on her property. (*Id.* at pp. 1138, 1140.) After analyzing the pertinent Health and Safety Code provisions, the court concluded the statutes delineated recovery for "the costs of suppressing the fire, providing rescue or emergency services, investigation, making reports, and costs relating to accounting for the fire and collection of the suppression and rescue costs," but did not mention attorney fees for enforcing or defending an action to recover such costs. (*Id*. at pp. 1140-1141.) Here, Code of Civil Procedure section 1094.6, subdivision (c), provides for recovery of the "actual costs for transcribing or otherwise preparing the record." It does not delineate or limit those costs to certain categories. Nor is the County seeking to recover attorney fees for enforcing or defending an action. It is simply seeking to recover the costs it actually incurred to prepare the record.

Sky Vista's citation to *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095 (*SAIC*) is also inapposite. In a prior appeal in that case, we reversed an attorney fee award concluding the contract language at issue did not permit

recovery of attorney fees. We remanded to consider whether items the trial court awarded for "litigation expenses" amounted to attorney fees, which would be disallowed under the terms of the contract, or as otherwise recoverable costs under Code of Civil Procedure section 1033.5. (*SAIC*, *supra*, at p. 1099.) On a petition for writ of mandate challenging the new award of costs, we concluded the costs of hiring a "high tech" paralegal to organize documents and access them in discovery and trial were not recoverable under the terms of the contract at issue in that case for the same reason we disallowed recovery of attorney fees. (*Id*. at p. 1104.) *SAIC* did not involve costs and expenses associated with preparation of an administrative record and it has no application to the facts before us.

C

The Otay Ranch parties did not challenge below the reasonableness of the hourly rates charged for the attorney and the paralegals for record preparation, which were discounted from their regular rates to $350 and $100 per hour, respectively. Sky Vista makes no such challenge on appeal. However, the trial court undertook its own assessment of the reasonableness of those rates. It took into account the nature and complexity of the case, the results obtained, the amount of work involved, the skill required and the time consumed as well as the court's own knowledge and experience with the rates charged in the community for similar work and concluded the "rates charged are at the low end of what the court would consider reasonable given the experience of counsel." The court did limit the amount awarded to only those hours

reflecting labor after the date on which the County affirmatively elected to prepare the administrative record. We find no abuse of discretion in this regard.

## III

### *Evidence Submitted in Reply*

Sky Vista contends the trial court abused its discretion in disregarding evidence it submitted with its reply brief regarding an indemnity agreement between the County and real party in interest Flat Rock. Sky Vista claims it was unaware of the indemnity agreement until the County submitted its bills in response to the motion to tax costs and these bills showed they were sent to both the County and to Flat Rock. Their counsel then reviewed the administrative record served in this case before the dismissal and discovered the indemnity agreement. Sky Vista submitted the indemnity agreement to the court with its reply brief. At the hearing, counsel for the County explained the agreement and copies of billing invoices had been produced in a related case months before Sky Vista filed its motion to tax. The trial court disregarded the evidence submitted with the reply brief, including the indemnification agreement.

"The general rule of motion practice . . . is that new evidence is not permitted with reply papers. . . . '[T]he inclusion of additional evidentiary matter with the reply should only be allowed in the exceptional case . . . ' and if permitted, the other party should be given the opportunity to respond." (*Jay v. Mahaffey* (2013) 218 Cal. App. 4th 1522, 1537-1538.) "This rule is based on the same solid logic applied in the appellate courts, specifically, that '[p]oints raised for the first time in a reply brief will ordinarily not be

considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' " (*Id.* at p. 1538.)

We cannot conclude the trial court abused its discretion in disregarding the evidence and argument regarding the indemnification agreement because it was raised for the first time in reply. Although the trial court has discretion to admit new evidence or argument on reply under certain circumstances, it was not an abuse of discretion to decline to do so based on the facts presented in this case. (*Jay v. Mahaffey*, *supra*, 218 Cal.App.4th at p. 1538.)

## DISPOSITION

The appeals of Otay Ranch and Sky Communities are dismissed. The order and judgment awarding costs for preparation of the administrative record is affirmed. The County is entitled to costs on appeal.


MCCONNELL, P. J.

WE CONCUR:


NARES, J.


AARON, J.

22